IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY | : : : | CIVIL ACTION |
| v. | : : | No. 10-3634 |
| MICHAEL J. FILACHEK, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                          **May 25, 2011**

      Plaintiff Allstate Property and Casualty Insurance Company (Allstate) brings this declaratory judgment action seeking a declaration that it is not required to defend its insured, Defendant Michael Filachek, in a Pennsylvania wrongful death action brought by Linda Ung against Filachek, Matthew Maher, and Mad River Philly d/b/a Mad River Bar & Grille (Mad River).[1] Allstate asks this Court to enter judgment on the pleadings in its favor. For the following reasons, this Court will grant Allstate's motion and declare Allstate owes no duty to Filachek to defend him in the Pennsylvania action.

**FACTS**[2]

      On March 7, 2009, Filachek was a passenger in a vehicle owned and operated by Maher. While traveling on the Atlantic City Expressway, Maher lost control of the vehicle and struck a car

---

[1] Although Ung originally named two other bars, Nodding Head and Urban Saloon, in the Pennsylvania action, she later filed a second amended complaint which named only Maher, Filachek, and Mad River as defendants.

[2] In reviewing a motion for judgment on the pleadings, a court views the pleadings in the light most favorable to the non-moving party. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988). Additionally, in determining whether an insurer has a duty to defend, a court examines only the factual allegations made in the complaint, and cannot consider additional information which may come to light in discovery. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006).

operated by Hort Kap, Ung's husband. Kap was killed in the collision.

Before the collision, Filachek and Maher spent the evening drinking in Philadelphia at the three bars whose corporate owners are named as Defendants in this action: Nodding Head Brewery, Urban Saloon, and Mad River. The last bar Filachek and Maher visited was Mad River, where they arrived late in the evening and stayed until the bar closed at 2:00 a.m. While there, Maher "pounded shots of liquor" in Filachek's presence. Compl. ¶ 36. When Mad River closed, Maher and Filachek decided to drive to Atlantic City. Maher drove, and Filachek rode in the front passenger seat. Near milepost 18.6 on the Atlantic City Expressway, Maher collided with Kap's car while traveling at 103 miles per hour. His blood alcohol level was .21%, well over the .08% legal limit in both Pennsylvania and New Jersey.

As a result of this accident, Ung, individually and as administratrix of Kap's estate, sued Maher, Filachek, and Mad River for Kap's wrongful death. Ung claims Filachek is liable because he (1) provided Maher with alcohol and encouraged Maher to drink to excess; (2) failed to investigate whether Maher was capable of safely driving his car to Atlantic City; (3) failed to obtain alternative transportation to Atlantic City despite knowing Maher was under the influence of alcohol and could not legally drive; (4) failed to ensure Maher safely operated the vehicle and kept a safe following distance; (5) failed to "keep a proper lookout" and observe road conditions, including the presence of other vehicles on the road; (6) failed to ensure Maher braked or took other evasive action to avoid hitting Kap's car; (7) sent text messages immediately prior to the crash, despite knowing Maher was driving in excess of 100 miles per hour; (8) failed to assume operation of the vehicle when it became apparent Maher was unable to safely drive; and (9) failed to otherwise act to avoid the collision. Compl. ¶72.

At all times relevant to this litigation, Allstate insured Filachek under a Pennsylvania homeowners insurance policy (the Policy). Based on this policy, Allstate retained counsel to defend Filachek in the wrongful death action;, however, Allstate filed the instant action seeking a declaration that it is not obligated to defend Filachek because the Policy excludes coverage for injuries arising from the use, or supervision of the use, of a motor vehicle.

**DISCUSSION**

A motion for judgment on the pleadings is analyzed under the same standard as a Rule 12(b)(6) motion to dismiss. *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). Judgment on the pleadings will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citation omitted).

Allstate asserts it is entitled to a declaratory judgment because Filachek's conduct related to Kap's death is excluded from coverage under the Policy. "An insurer's duty to defend and indemnify the insured may be resolved via declaratory judgment actions." *Erie Ins. Exch. v. Claypoole*, 673 A.2d 348, 355 (Pa. Super. Ct. 1996). In interpreting Pennsylvania insurance policies, a court should "consider [the] policy from the point of view of the insured and construe [the] policy most strongly against the insurer." *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1366-67 (Pa. 1987). An insurer must defend its insured even against lawsuits that are "groundless, false, or fraudulent," but it is not required to defend its insured against complaints when, even if the complaint were successful, the insurer would not be required to pay a judgment because such judgment would not be covered by the insurance policy. *Id.* at 1368 (citing *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320 (Pa. 1963) (explaining "the obligation to defendant arises whenever the complaint

filed by the injured party may *potentially* come within the coverage of the policy")). When an insurer contends coverage under its policy is precluded by a policy exclusion, it bears the burden of proving such an exclusion applies. *Id; see also Alea London, Ltd. v. Woodlake Mgmt.*, 365 F. App'x 427, 429 (3d Cir. 2010) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)).

Allstate argues it is not obligated to defend against or indemnify Filachek for the allegations included in Ung's Second Amended Complaint because Kap's death arose out of the ownership, maintenance, use and/or occupancy of a motor vehicle, and is therefore excluded from coverage by the Policy. Allstate asserts two Policy exclusions are applicable to Ung's claims. The first exclusion (the vehicle use exclusion) states, "We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer." Policy § C(4). The second exclusion (the vehicle supervision exclusion) states:

> We do not cover bodily injury or property damage arising out of:
>     (a) the negligent supervision by any insured person of any person; or
>     (b) any liability statutorily imposed on any insured person
> arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motorized land vehicle or trailer which is not covered under Section II of the policy.

Policy § C(7).

Filachek and Ung oppose Allstate's motion for judgment on the pleadings, and Mad River joins in Filachek's opposition.[3] Filachek argues Allstate should defend him in the underlying action because the terms of the Policy are ambiguous. Alternatively, Filachek argues Allstate should at

---

[3] The remaining Defendants in this action, Nodding Head and Urban Saloon, have filed no response to Allstate's motion.

least defend him in the action, even though it may not ultimately be required to indemnify him. Ung argues the Policy exclusions are inapplicable because (1) Maher's intoxication meant he was not "properly" using the car, and (2) Filachek's actions were unrelated to the vehicle and constitute a separate, non-automobile-related cause of injury.

First, Filachek contends that, at a minimum, Allstate is required to defend him in the underlying negligence case, noting that an insurer's duty to defend is broader than its duty to indemnify the insured. While Filachek is correct that Allstate must defend him against even those claims that are "groundless, false, or fraudulent," *Erie*, 533 A.2d at 1368, the duty to defend "is not activated by every allegation raised against the insured," *Claypoole*, 673 A.2d at 355. Instead, an insurer is obligated to defend only those claims which may potentially come within the policy's coverage. *Erie*, 533 A.2d at 1368; *see also Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1094 (Pa. 1997). Thus, this Court must determine whether the factual allegations in Ung's complaint fall within the scope of the Policy, as determined by its express language. *Casper v. Am. Guarantee & Liab. Ins. Co.*, 184 A.2d 247, 248 (Pa. 1962) (explaining an insurer must defend claims where the factual allegations in the complaint "might, or might not" come within the scope of the policy).

The Third Circuit recently addressed a similar issue in *Countryway Insurance Company v. Slaugenhop*, 360 F. App'x 348 (3d Cir. 2010), a non-precedential decision which this Court finds persuasive. The *Countryway* court reversed a district court's determination that Countryway had a duty to defend its insured in a negligence action arising from a car accident which occurred after the insured negligently instructed his elderly, sight-impaired father to drive a car owned by the father, despite knowing his father could not safely do so because he "was 93 years old, had a history of glaucoma, and was not wearing his glasses despite a driver's license requirement that he wear

5

corrective lenses when operating a motor vehicle." *Id.* at 349. The person injured in the subsequent collision sued both father and son, alleging the father negligently operated his car and the son, Countryway's insured, negligently directed his father to drive. *Id.* Countryway argued the injury was excluded from coverage under the insurance policy's motor vehicle exclusion, and asserted it had no duty to defend its insured. The district court disagreed, finding the language of the policy ambiguous, and held Countryway was required to defend the insured. In reversing this determination, the Third Circuit admonished district courts not to "resort to a strained contrivance in order to find an ambiguity" in an insurance policy, and explained that Pennsylvania courts "have consistently rejected attempts to divorce allegations of negligent entrustment from the excluded 'use' of a vehicle that actually causes the plaintiff's injuries." *Id.* at 351-52 (citing *Pulleyn v. Cavalier Ins. Corp.*, 505 A.2d 1016, 1020 (Pa. Super. Ct. 1986) ). Because liability for a car accident injury "is not actually triggered until the motor vehicle is used in a negligent manner," the court ruled the injured party could not separate negligent delegation allegations against the insured from the use of the vehicle which actually gave rise to the injured party's claims. *Id.* at 352.

*Countryway* is factually analogous to the case at hand. Like *Countryway*, this is a negligent delegation case in which Filachek allegedly watched Maher become intoxicated, encouraged Maher to drink, and delegated driving duties to him. Although these acts may well have been negligent and a jury may find Filachek liable, such liability is undeniably intertwined with Maher's use of the vehicle that actually gave rise to the injury. The vehicle Maher drove was both the instrumentality of the injury and a necessary element in Ung's theories of liability against both men. Thus, because Kap's death indisputably "arose out of the use" of a motor vehicle, any liability-inducing conduct which occurred before such use cannot be divorced from the negligent driving that led to the fatal

6

car accident. *See Wilcha v. Nationwide Mut. Fire Ins. Co.*, 887 A.2d 1254, 1263 n.3 (Pa. Super. Ct. 2005) (collecting cases from various states holding that a negligent entrustment claim is not separate from the underlying act of negligence).

Moreover, even if Ung's allegations against Filachek could be so neatly separated from her claims against Maher, Filachek's insurance policy also excludes coverage for bodily injury arising out of the negligent supervision of any person arising from the use of any motorized land vehicle. Policy § C(7). Because the Allstate Policy unambiguously excludes coverage for injuries which arise out of the use of a motor vehicle, or the supervision of another's use of a motor vehicle, Ung's negligence claims against Filachek fail to support a recovery that would be covered by the Policy. Allstate therefore has no duty to defend Filachek in the underlying action.

Filachek contends the Policy exclusions do not apply to him, because his actions or inactions, as pled by Ung, do not arise out of his ownership, maintenance, use, or occupancy of any motor vehicle. Filachek's argument fails because he misconstrues the scope of the exclusions. The Policy's vehicle use exclusion is not directed at those liability-inducing *actions* which relate to the ownership, maintenance, use, or occupancy of a motor vehicle. Instead, the exclusion bars coverage for all "bodily injury or property damage" which arises out of "the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer." Policy § C(4). This exclusion is not limited to only an injury which arises from the insured's use of a motor vehicle, or the use of an insured's motor vehicle. The policy is therefore unambiguously broader than Filachek suggests, and excludes coverage for any injury or damage arising out of anyone's use of a vehicle. Allstate need not defend or indemnify Filachek under these circumstances.

Ung's arguments in opposition to Allstate's motion for judgment on the pleadings also lack

7

merit.  Ung first contends the Policy excludes coverage for injuries which arise out of the *use* of a vehicle, and asserts that because Maher was too intoxicated to legally drive, he was not properly *using* the vehicle within the meaning of the vehicle use exclusion.  In support of this argument, Ung relies on *Erie*, a case in which the Pennsylvania Supreme Court held the motor-vehicle exclusion in a homeowners insurance policy did not apply when the insureds' three-year-old son caused a neighbor's car to roll down a hill because the child was not "using" the car within the meaning of the policy exclusion.  In so ruling, the Court explained, "'use' as employed in the insuring agreement . . . denotes an element of rational, purposeful conduct" which cannot apply to "mere movement of a motor vehicle."  *Erie*, 533 A.2d at 1367.  In describing the child's actions, the Court said he "unwittingly set [a car] in motion" and held the car was not "used" because any "user" must "at least know and understand the uses to which an automobile, as an automobile, may be put." *Id.* at 1368.

The instant case is quite distinct.  While Maher's actions in driving his car on the night in question were illegal, driving a car while inebriated is still "using" the car.  Maher made a misguided, yet purposeful, decision to drive from Philadelphia to Atlantic City, and consciously started the car, operated it, and maneuvered it toward its destination–activities which are not equivalent to inadvertently causing a car to move or "unwittingly setting an automobile in motion." *Id.* at 1368.  Thus, Ung's argument that the vehicle use exclusion is inapplicable because Maher was not properly using the car fails.

Ung next contends the Policy exclusions do not apply because, although Kap's death was caused by the collision, all of Filachek's actions that night were non-auto related and constitute negligence separate and apart from Maher's use of the vehicle.  In support of this argument, Ung relies exclusively on a California Supreme Court case with highly unusual underlying facts, *State*

8

*Farm Mut. Auto. Ins. Co. v. Partridge*, 514 P.2d 123 (Cal. 1973). In *Partridge*, the insured was simultaneously driving in the country and hunting rabbits by shooting at the animals out of the windows of the moving car. *Id.* at 125. During this hunt, the insured was using a pistol which he had modified by filing down the trigger so that the slightest degree of pressure would cause the gun to go off, giving it a "hair trigger" action. *Id.* When the insured abruptly pulled the car off the road to follow a fleeing rabbit, the car went over a large bump, causing the insured to squeeze the trigger of his pistol and shoot one of the passengers in the car. *Id.* On appeal, the parties agreed the gunshot wound the passenger suffered was caused by two distinct acts of negligence by the insured. First, he negligently modified his pistol in a manner that created an exceptionally dangerous weapon, and second, he caused the pistol to go off by negligently driving off the road and onto bumpy terrain. *Id.* at 126. Because the injury was proximately caused by these two separate actions, the California Supreme Court ruled that both the insured's motor vehicle insurance and his homeowners insurance policy covered the passenger's injuries. *Id.* at 129 (explaining "when two [risks] constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy"). Ung contends Maher's actions in this case are similar to the insured's non-auto-related actions in *Partridge*, and argues there are two negligent actions in this case–first, Filachek "brought [Maher] to intoxication" and encouraged him to drive to Atlantic City and second, Maher drove while intoxicated and exceeded safe rates of speed to collide with Kap's vehicle. Def.'s Resp. 11. Ung encourages this Court to "[s]ubstitute loaded gun for loaded driver" and to "[s]ubstitute dangerous weapon for dangerous instrumentality." *Id.*

Maher's reliance on *Partridge* is misplaced. In *Partridge*, two negligent actions by the insured caused the victim's gunshot wound–both the insured's negligent driving and his negligent

9

modification of a hand gun. In this case, the Policy's vehicle use exclusion bars coverage for all injuries arising out of the use of a motor vehicle. In Pennsylvania, "[t]he term 'arising out of' is interpreted in terms of 'but for' causation." *Alea London*, 365 F. App'x at 429 (citing *Madison Constr.*, 735 A.2d at 109-10). Thus, under the Policy's exclusion, if the use of an automobile was the "but for" cause of injury, no insurance coverage will be provided, and, unless the complaint alleges Filachek's negligence itself proximately caused Kap's death, Allstate owes no duty to defend Filachek. *See id.* (evaluating an assault and battery insurance policy exclusion and explaining an insurer owes no duty to defend its insured unless the insured's negligence is alleged to have directly led to the injuries (citing *QBE Ins. Corp. v. M&S Landis Corp.*, 915 A.2d 1222, 1229 (Pa. Super. Ct. 2007))).

Unlike the separate acts of negligence which caused the passenger's gun shot wound in *Partridge*, Filachek's actions in the instant case cannot be separated from Maher's drunken driving. Here, Kap was injured and killed when Maher's car collided with his car, and it is indisputably the car accident which caused his tragic death. Although Ung asserts Maher was negligent in buying Filachek drinks, encouraging him to drink to excess, and failing to (1) call a taxi to transport the two men from the bar, (2) prevent Filachek from driving to Atlantic City, or (3) ensure Filachek drove in a safe and lawful manner, none of these actions are alleged to have been the "but for" cause of Kap's death.[4] Despite Filachek's potentially negligent acts, he incurred no liability to Ung until

---

[4] The separate allegations against Maher and Filachek are similar to complaints in which plaintiffs have sued two defendants, claiming one defendant negligently drove a vehicle which the other is liable for negligently entrusting to the first. Although some state courts have held that vehicle use exclusions do not bar coverage when an insured is sued for negligent entrustment, Pennsylvania courts have rejected that approach. *Pulleyn v. Cavalier Ins. Corp.*, 505 A.2d 1016, 1019-21 (Pa. Super. Ct. 1986) (surveying the evolving case law regarding the applicability of vehicle use exclusions to negligent entrustment claims). Instead, Pennsylvania courts have held vehicle use

10

Maher negligently drove his vehicle. Such use of the vehicle is within the scope of the Policy exclusions, and coverage is therefore barred. Accordingly, Allstate's motion for judgment on the pleadings is granted.

An appropriate order follows.

---

exclusions bar coverage for such claims, reasoning that "although the act of negligently entrusting a motor vehicle is an essential (if not the primary) element of the tort [of negligent entrustment], liability giving rise to the tort is not actually triggered until the motor vehicle is used in a negligent manner resulting in injury." *Id.* at 1020.